# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

## IN RE:
## CUMMINGS MANOOKIAN, PLLC,
Debtor.

Brian Manookian, Appellant

v.

Trustee Jeanne Ann Burton, Appellee

Case No. 3:21-cv-00797

Judge Waverly D. Crenshaw, Jr.
Magistrate Judge Alistair E. Newbern

**ORAL ARGUMENT REQUESTED**

---

**APPELLANT BRIAN MANOOKIAN'S OPENING BRIEF**

---

# TABLE OF CONTENTS

I. JURISDICTIONAL STATEMENT .................................................................................3
II. STATEMENT OF THE ISSUES ...................................................................................3
III. STANDARD OF REVIEW ............................................................................................3
IV. STATEMENT OF THE CASE ......................................................................................4
V. ARGUMENT ................................................................................................................10
A. The Bankruptcy Court Erred in Holding that Appellant Must Show a "High Likelihood" of Surplus ..............................................................................................10
B. The Record Establishes a Reasonable Possibility of Surplus .......................................11
C. The Trustee Successfully Obtained a Stay of Discovery in the Companion Proceeding, Preventing Appellant from Showing a Reasonable Possibility of Surplus ........13
D. Subsequent Developments Confirm a Reasonable Possibility of Surplus ....................13
VI. CONCLUSION ............................................................................................................14

## I. JURISDICTIONAL STATEMENT

Appellant Brian Manookian ("Appellant") appeals from the Order Granting Trustee's Motion for Compromise and Settlement and Finding that Brian Manookian Lacks Standing (the "Order") (No. 3:19-bk-07235 (Bankr. M.D. Tenn.) (Doc. 147)) (App'x 2). The Bankruptcy Court had jurisdiction over the matter under 11 U.S.C. §§ 1334 & 157. The Decision is a final order appealable under 28 U.S.C. § 158 (a)(1), and this Court has jurisdiction to hear the appeal under the same statute.

Appellant timely filed his Notice of Appeal on October 14, 2021, within 14 days of the entry of the Decision as prescribed by Fed. R. Bankr. P. 8002.

## II. STATEMENT OF THE ISSUES

1. Did the Bankruptcy Court err in holding that Appellant was required to show a "high likelihood" of a surplus to have standing to object to the settlement of a valueless legal claim for $250,000?

2. Did the Appellant show a reasonable possibility that the bankruptcy estate could yield a surplus, entitling an interested party who would benefit from the surplus to object to the settlement of a valueless legal claim for $250,000?

## III. STANDARD OF REVIEW

"When reviewing a bankruptcy court's decision in a 'core proceeding,' a district court functions as an appellate court, and applies the standard of review

3

Case 3:21-cv-00797   Document 5   Filed 11/18/21   Page 3 of 15 PageID #: 160

generally applied in the federal courts of appeals." *In re Matter of Webb*, 954 F.2d 1102, 1103-04 (5th Cir.1992) (footnotes omitted). Thus, under 28 U.S.C. § 158(a), in reviewing a bankruptcy court's decision, a district court applies a clearly erroneous standard of review to findings of fact, and a de novo standard of review to conclusions of law. *In re Baker & Getty Financial Services, Inc.*, 106 F.3d 1255, 1259 (6th Cir.1997). "On an appeal the district court ... may affirm, modify, or reverse a bankruptcy judge's judgment, order or decree or remand with instructions for further proceedings." *In re Buchanan*, No. 2:05-0114, 2006 WL 2090213, at *1 (M.D. Tenn. July 25, 2006) (citing Fed. R. Bankr. P. 8013).

## IV. STATEMENT OF THE CASE[1]

### A. The Underlying *Chase v. Stewart* Matter

In 2015, real estate developer David Chase filed a Williamson County Circuit Court malicious prosecution case styled *Chase v. Stewart* ("the Chase Matter"), contending that various individuals conspired to have him arrested for domestic violence for the purpose of ruining his reputation and depriving him of his burgeoning career in real estate development. Brian Manookian, a partner with the firm Cummings Manookian PLLC, agreed to represent six (6) of the eight (8) defendants in Mr. Chase's lawsuit on a *pro bono* basis.

---

[1] This factual background section is adapted from Doc. 112 & 123 in the underlying bankruptcy proceeding (Bankr. M.D. Tenn. No. 3:19-bk-07235) (attached hereto as App'x 3 & 4).

4

In the course of the representation, Mr. Manookian subpoenaed targeted materials from David Chase's employers, business entities, and parents (hereinafter "the Chase Parties"). On August 31, 2015, the Chase Parties responded by filing a Motion for the Entry of an Agreed Limited Protective Order (hereinafter the "ALPO") covering a narrow, specifically defined set of materials that could potentially be viewed as confidential.

The Trial Court never entered the ALPO as submitted by the Chase Parties, and the Chase Parties themselves immediately disregarded its terms. As such, and in the absence of any Order to the contrary, Brian Manookian disseminated certain of the Chase Parties' discovery materials to Media Outlets, the U.S. Attorney's Office, and the Federal Bureau of Investigation.

The Chase Parties responded by petitioning the Trial Court to hold Brian Manookian and Cummings Manookian in contempt of court for purported "violations" of a protective order that did not exist at the time of Mr. Manookian's dissemination.

Deep into the pendency of the years-long contempt proceedings, the Trial Court Judge, Michael Binkley, revealed that he held a pervasive personal animus against Brian Manookian. Brian Manookian and Cummings Manookian quickly moved for the Trial Court's recusal. The Trial Court not only refused to do so but

5

began swiftly entering orders finding Manookian in contempt of court and awarding $748,769.21 in civil contempt damages against him and his law firm.

Brian Manookian and Cummings Manookian promptly appealed the Trial Court's Orders, arguing that the Trial Court was required to recuse itself from the matter; that the Trial Court's findings were not based in fact or law, but rather on impermissible personal biases; and that, in any event, Brian Manookian and Cummings Manookian could not be held in contempt for violating an Order that did not exist.

### B. Appointment of Phillip Young as a Receiver in the State Action

While the Chase Appeal was pending, the Chase Parties filed a collections action asking the Williamson County Chancery Court to create a receivership over Cummings Manookian's accounts receivable and to specifically appoint Attorney Phillip Young as the Receiver to collect the $748,769,21 awarded by Judge Michael Binkley. The State Court did so, and Philip Young immediately began placing liens on Cummings Manookian's receivables and levying them as they came due.

Mr. Young collected tens of thousands of dollars owed to Cummings Manookian, ultimately paying all of that money to himself, and, in the meantime, instituting new adverse proceedings against Cummings Manookian, including seeking monetary awards against Cummings Manookian and asking the Court to hold Cummings Manookian in contempt.

6

Case 3:21-cv-00797   Document 5   Filed 11/18/21   Page 6 of 15 PageID #: 163

### C. Appointment of Phillip Young as Special Counsel in the Underlying Bankruptcy Proceeding

While Phillip Young was acting as Receiver in the State Court Action – and while the Chase Appeal was still pending – Mr. Manookian filed for bankruptcy on behalf of Cummings Manookian; in part, to seek protection from the increasingly punitive actions Phillip Young was taking against Cummings Manookian at the request of the Chase Parties.

The Bankruptcy Trustee petitioned to have Phillip Young – the same attorney who was concurrently pursuing Cummings Manookian's receivables on behalf of the Chase Parties as well as pursuing new sanctions against Cummings Manookian in the State Action – appointed as her Special Counsel in the Bankruptcy matter. Her request was granted over Mr. Manookian's objection, and Phillip Young began serving dual roles as Counsel for the Trustee in Cummings Manookian's Bankruptcy as well as Receiver in the Chase Parties' state court lawsuit against Cummings Manookian; roles in which he continues to serve as of the time of this filing.

### D. The Court of Appeals' Decision and Denial of Rehearing

On February 4, 2021, the Tennessee Court of Appeals released its holding in *Chase v. Stewart*. The Court of Appeals vacated the judgment of $748,769,21, finding that Judge Michael Binkley should have recused himself as a result of an appearance of bias; and further finding that the bias had existed for so long as to justify his retroactive recusal.

The Chase Parties petitioned the Court of Appeals for rehearing. Their Petition was denied in a multi-page order issued on March 16, 2021.

### E. The Chase Parties' Offer of a Walk-Away

Two days after the Tennessee Court of Appeals denied the Chase Parties' Petition for Rehearing, the Chase Parties sent a settlement letter to Counsel for Brian Manookian offering to "walk-away" from their purported claims against Brian Manookian and Cummings Manookian in exchange for no payment and with all parties executing mutual releases. The letter indicated that the Chase Parties would seek agreement for the "walk-away" settlement on behalf of Cummings Manookian from the Trustee.

### F. The Chase Parties Withdraw from Negotiations and Pay Receiver Phillip Young's Fees in the State Action

Days after offering a walk-away settlement on their now-vacated claims, the Chase Parties *sua sponte* and gratuitously announced they had agreed to pay all of Phillip Young's outstanding fees in the State Collections action. This was significant for Mr. Young. As the Receiver of a collections action where the underlying judgment had been vacated, Mr. Young stood the likelihood of not only having his outstanding fees unpaid, but also having Cummings Manookian and the other parties against whom he had seized receivables and which he remitted to himself as Receiver, seek reassessment and repayment.

### G. The Chase Parties' New Proposed Settlement with State Receiver / Federal Bankruptcy Special Counsel Phillip Young

Shortly after having gratuitously agreed to pay Receiver Phillip Young's outstanding fees in the State Action, the Chase Parties and Special Counsel Phillip Young in the Bankruptcy Matter entered into a new settlement which was drastically worse for Cummings Manookian than the previously proposed "walk-away," but provides a quarter-million-dollar windfall for the Chase Parties.

In exchange for releasing the *vacated* claims for which the Chase Parties had previously only required a non-payment and mutual release, Special Counsel Phillip Young, on behalf of the Bankruptcy Trustee, proposed to pay the Chase Parties $250,000.

### H. The Bankruptcy Court Approves the $250,000 Settlement, Overruling Appellant's Objection on Standing Grounds

On September 29, 2021, the Bankruptcy Court considered the Trustee's motion to approve the $250,000 settlement. During the hearing, the transcript of which is attached hereto, the Bankruptcy Court found that Appellant Brian Manookian lacked standing to challenge the settlement because he could not show a "high likelihood" that the bankruptcy would result in a surplus, entitling him to recover surplus assets.

## V. ARGUMENT

### A. The Bankruptcy Court Erred in Holding that Appellant Must Show a "High Likelihood" of Surplus

It is black-letter bankruptcy law that a party seeking to object to a bankruptcy claim settlement must show that he may stand to recover excess funds after all claims are paid. In other words, he must demonstrate that there is a "***reasonable possibility***" of surplus after all debts are satisfied. *In re Lunan*, 523 F. App'x 339, 340 (6th Cir. 2013). Such a reasonable possibility gives him the pecuniary interest necessary to establish prudential standing to object to a bankruptcy order. *In re Cult Awareness Network, Inc.*, 151 F.3d 605, 608 (7th Cir. 1998).

He need not show a *probability* or *certainty* of recovery, though—only "a reasonable possibility of a surplus once all claims are paid." *In re Ulz*, 401 B.R. 321, 328 (Bankr. N.D. Ill.), *aff'd sub nom. C&R Mortg. Corp. v. Ulz*, 419 B.R. 793 (N.D. Ill. 2009). In practice, this inquiry simply asks whether "there could be a surplus after all claims are paid." *In re 60 E. 80th St. Equities, Inc.*, 218 F.3d 109, 115 (2d Cir. 2000) (citing L. King, Collier on Bankruptcy § 502.02[2][c]).

Here, the Bankruptcy Court erred—as a matter of law—by applying the wrong legal standard to this analysis. In ruling on Appellant's objection, the Bankruptcy Court required Appellant to show "a ***high likelihood*** that this case would be a surplus case." (App'x 1 at 54 (emphasis added).) Further heightening the bar, the Bankruptcy Court required Appellant to provide "concrete evidence . . .

something tangible and concrete that the Court could rely on in making a determination that the [sic] it's a **high likelihood** that this case would be a surplus case." (App'x 1 at 54-55 (emphasis added).)

Nor did the Bankruptcy Court's written order correct the erroneous standard; indeed, it provided no rationale other than the verbal ruling disallowing Appellant's objection based on the erroneous standard. (App'x 2.)

This Court, applying a *de novo* standard of review, *see In re Baker & Getty Financial Services, Inc.*, 106 F.3d 1255, 1259 (6th Cir.1997), should correct the misstatement of law and remand the case to the Bankruptcy Court for further proceedings under the proper "reasonable possibility of surplus" standard.

### B. The Record Establishes a Reasonable Possibility of Surplus

Appellant met his burden of establishing a reasonable possibility of surplus and would have had standing to object to the claim settlement, had the Bankruptcy Court applied the correct legal standard. Indeed, the Trustee herself conceded that it was "possible" that the bankruptcy estate was worth well over $2,000,000—far more than value of claims asserted against it. (App'x 1 at 21-22.)

During the hearing on the Trustee's Motion for Compromise and Settlement, the Trustee agreed that the debtor, Cummings Manookian, had assets greater than its liabilities, but stated that the question was whether she could collect them. (App'x 1 at 22.) The claims asserted against the bankruptcy estate total over $800,000,

11
Case 3:21-cv-00797   Document 5   Filed 11/18/21   Page 11 of 15 PageID #: 168

according to the Trustee's testimony. The Trustee testified that the bankruptcy estate includes:

- Approximately $800,000 already being held by the Bankruptcy Court or Trustee;
- a $1,350,000 attorneys' fee in the resolved *Fitzgerald* case;
- attorneys' fees in **15 other cases** enumerated by the Trustee in her Adversary Complaint (No. 3:20-ap-90002), and on which attorneys' liens have been filed;
- costs for the use of Cummings Manookian's premises, furniture, equipment, and intellectual property;
- a punitive damages award in the adversary proceeding;
- attorneys' fees in the adversary proceeding; and
- pre- and post-judgment interest in the adversary proceeding;

(App'x 1 at 22-23.) These assets dramatically exceed the claims asserted against the bankruptcy estate; if the Trustee recovers even a fraction of the fees, costs, damages awards, and interest that she asserts she is entitled to recover, this will be a surplus case, and Appellant has standing to object to the claim settlement.

The Trustee stated that she was "confident" that the allegations in the adversary proceeding constitute a "good case," and that it is part of her "duty as a Trustee . . . to pursue assets, you know, that I think will produce money to pay

creditors." (App'x 1 at 22.) This is, after all, why she employs an attorney to represent her in recovering these assets. Under questioning by her own counsel, the Trustee explained the scenario in which she could produce a surplus in the case: if she is successful in the legal claims she filed on behalf of Cummings Manookian, and if she is successful in collecting the firm's accounts receivable—$800,000 of which she has successfully impounded in the last two years. (App'x 1 at 36.) The Trustee's own assertions establish a "reasonable possibility of surplus"; she cannot pay a lawyer to recover millions of dollars for the debtor while simultaneously disclaiming any possibility of recovering a surplus.

### C. The Trustee Successfully Obtained a Stay of Discovery in the Companion Proceeding, Preventing Appellant from Showing a Reasonable Possibility of Surplus

The Trustee admitted that she obtained multiple stays of discovery in her companion adversary proceeding (App'x 1 at 28-29), which prevented Appellant from obtaining discovery to meet his burden of showing a reasonable possibility of surplus.

### D. Subsequent Developments Confirm a Reasonable Possibility of Surplus

After the filing of this Appeal, the Trustee through her counsel asserted an entitlement to an unspecified amount of attorneys' fees in the *Shoemaker* case pending in Davidson County Circuit Court. These actions by the Trustee belie any

claim that there is no possibility of a surplus in this case and further increase the likelihood of collection of assets in excess of claims.

## VI. **CONCLUSION**

For the foregoing reasons, Appellant respectfully requests that the Court vacate the Bankruptcy Court Order Granting Trustee's Motion for Compromise and Settlement and Finding that Brian Manookian Lacks Standing (Doc. 147) and either hold that the record establishes a reasonable possibility of surplus or remand the case for further proceedings under the correct legal standard.

Date: November 18, 2021          Respectfully submitted,

*/s/ John Spragens*
John Spragens (TN Bar No. 31445)
Spragens Law PLC
311 22nd Ave. N.
Nashville, TN 37203
T: (615) 983-8900
F: (615) 682-8533
john@spragenslaw.com

*Attorney for Appellant Brian Manookian*

# **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that the foregoing Appellant's Opening Brief was filed November 18, 2021 and served electronically upon the following parties in interest as indicated on the receipt issued by the Court's electronic filing system:

Jay R. Lefkovitz
Lefkovitz & Lefkovitz, PLLC
312 East Broad Street, Suite A
Cookeville, TN 38501
(931) 528-5297 (T)
931-526-6244 (F)
JLefkovitz@lefkovitz.com

*Counsel for Debtor Cummings Manookian*

Phillip Young
One Franklin Park
6100 Tower Circle, Suite 200
Franklin, TN 37067
(615) 465-6008 (T)
phillip@thompsonburton.com

*Counsel for Trustee Jeanne Anne Burton*

John P. Konvalinka
Grant, Konvalinka & Harrison, P.C.
633 Chestnut Street Suite 900
Republic Centre
Chattanooga, TN 37450-0900
(423) 756-8400 (T)
(423) 756-6518 (F)
jkonvalinka@gkhpc.com

*Counsel for Creditor Grant, Konvalinka & Harrison, P.C.*

Daniel Puryear
Puryear Law Group
104 Woodmont Boulevard, Suite 201
Nashville, TN 37205
(615) 255-4859 (T)
(615) 630-6602 (F)
dpuryear@puryearlawgroup.com

*Counsel for Creditor D.F. Chase, Inc.*

                                                    /s/ John Spragens

15
Case 3:21-cv-00797   Document 5   Filed 11/18/21   Page 15 of 15 PageID #: 172