# UNITED STATES DISTRICT COURT FOR THE
# MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

IN RE: CUMMINGS MANOOKIAN, PLLC,       )
                                        )
        Debtor                    )
                                        )
BRIAN MANOOKIAN,                        )
                                        )
        Appellant                 )
                                        )
        v.                        )       No: 3:21-cv-00797
                                        )
JEANNE ANN BURTON, TRUSTEE,             )
                                        )
        Appellee.                 )

## MEMORANDUM OPINION AND ORDER

This bankruptcy appeal presents the question of whether the Bankruptcy Court applied the correct legal standard in determining that the debtor lacked standing to challenge a proposed settlement agreement. Because the Court finds that it did not, the settlement agreement will be vacated and this case will be returned to the Bankruptcy Court for further proceedings.

## I.

Brian Manookian, the appellant herein, filed a voluntary petition for Chapter 7 relief on behalf of the debtor, Cummings Manookian, PLC, a defunct Tennessee law firm. Jeanne Ann Burton, the appellee herein, was appointed to serve as the Chapter 7 Trustee for the estate of Cummings Manookian, PLC. Burton, in turn, sought to employ Thompson Burton, PLLC as special counsel, ostensibly because Phillip Young, a member of that firm, had been serving as receiver for the collection of the Debtor's accounts receivable in a state court action that was pending at the time the bankruptcy petition was filed. Over appellant's objection that such employment would create a

conflict of interest, the Bankruptcy Court approved the employment of Thompson Burton.

At issue on this appeal is Claim 5, or the Chase Claim, which is the largest claim brought against the estate. This is an unsecured claim filed by Dean Chase, Sandra Chase, and D.F. Chase, Inc. ("the Chase Parties" or "the Chase Claims") that arose from a sanctions judgment issued by Williamson County Circuit Court Judge Michael Binkley worth somewhere in the neighborhood of $750,000 to $800,000, with appellant putting the figure at $748,769.21 (which may have been the amount of sanctions imposed by the judge) and the appellee placing the figure at $806,927.04 (which may have been the entire amount listed in Claim 5). Regardless, the sanctions judgment was vacated by the Tennessee Court of Appeals because the trial judge harbored animus against Manookian. The appeals court also ordered a "retroactive recusal," and remanded the case for further proceedings before a different trial judge. Chase v. Stewart, No. M201801991COAR3CV, 2021 WL 402565, at *6 (Tenn. Ct. App. Feb. 4, 2021).

The Bankruptcy Trustee agreed to settle the Chase Claim for $250,000, and that decision was approved by the Bankruptcy Judge. The propriety of the decision by the Trustee to settle the claim, however, is disputed by the parties.

The Trustee claims that the decision to settle was straight-forward. At the time the Petition in bankruptcy was filed, the sanctions judgment was on appeal, but the underlying case was not stayed, making the Chase Claim "valid and enforceable." (Doc. No. 9 at 7). Even though the sanctions judgment was later vacated by the state appellate court, a new judge would have to determine whether sanctions were appropriate. "In the face of th[is] uncertainty," the Trustee decided to settle the Chase Claim for a fraction of its value in order to "reduce[] the potential exposure of the estate," and "allow[] the estate to avoid lengthy and costly ongoing litigation." (Id.

2

at 8).

Manookian presents a much more nefarious scenario. According to him, while the sanction judgment was on appeal in the state court, the Chase Parties filed a collections action in the Williamson County Chancery Court to create a receivership over Cummings Manookian's accounts receivable. Phillip Young, the same attorney who would later be appointed special counsel to the bankruptcy Trustee, was appointed as a receiver to collect on the judgment, and he immediately began placing liens on Cummings Manookian's receivables and levying on them as they came due. Young allegedly collected, and paid to himself, tens of thousands of dollars owed to Cummings Manookian, and instituted adversary proceedings against it.

After the appeals court issued its opinion vacating the sanctions judgment, the Chase Parties sought rehearing. Two days after that request was denied, the Chase Parties sent a settlement letter to Manookian's counsel, offering to "walk-away" from their claim in exchange for "no payment" and the signing of mutual releases. (Doc. No. 5 at 8). Days later, however, the Chase Parties "*sua sponte* and gratuitously announced they had agreed to pay all of Phillip Young's outstanding fees in the State Collections action." (Id. at 9). Shortly thereafter, Young, on behalf of the Bankruptcy Trustee, oddly proposed to pay the Chase Parties $250,000 as settlement for their claims, a vastly different outcome from the "walk away" settlement originally proposed.

It was against this backdrop that the Bankruptcy Court was presented with the Trustee's Motion to Approve Compromise and Settlement of the Chase Claim. The Bankruptcy Court held a bifurcated hearing on September 29, 2021. During the first phase, the issue of whether Manookian had standing to object to the proposed settlement was addressed, and the Bankruptcy Court found

3

that he did not. During the second phase, the Bankruptcy Court considered the settlement motion and an objection that had been filed by attorney John R. Konvalinka. Ultimately, the Bankruptcy Court found that "[t]he Trustee properly exercised her business judgment in reaching the proposed settlement of the Claim filed by the Chase Parties as proposed in the Settlement Motion," and approved the proposed settlement. (Doc. No. 1-3 at 3). Whether the Bankruptcy Court committed legal error in ruling that Manookian lacked standing is the subject of the appeal.

## II.

On appeal from the bankruptcy court, findings of fact are reviewed under the clearly erroneous standard, while conclusions of law are reviewed *de novo*. Rogan v. Bank One, N.A. (In re Cook), 457 F.3d 561, 565 (6th Cir. 2006). " Furthermore, when a question in the bankruptcy context involves a mixed question of law and fact, [the court] must break it down into its constituent parts and apply the appropriate standard of review for each part." In re Am. HomePatient, Inc., 420 F.3d 559, 563 (6th Cir. 2005) (quoting Wesbanco Bank Barnesville v. Rafoth (In re Baker & Getty Fin. Servs., Inc.), 106 F.3d 1255, 1259 (6th Cir.1997).

"A trustee in bankruptcy has the authority to seek a settlement of claims available to the debtor, but any proposed settlement is subject to the approval of the bankruptcy court, which enjoys 'significant discretion.'" In re MQVP, Inc., 477 F. App'x 310, 312–13 (6th Cir. 2012) (citing Fed. R. Bankr. P. 9019(a); In re Rankin, 438 F. App'x. 420, 426 (6th Cir.2011)). "When determining whether to approve a proposed settlement, the bankruptcy court may not rubber stamp the agreement or merely rely upon the trustee's word that the settlement is reasonable," but instead is under "an affirmative obligation to apprise itself of the underlying facts and to make an independent judgment

4

as to whether the compromise is fair and equitable." Id. (citing Reynolds v. C.I.R., 861 F.2d 469, 473 (6th Cir.1988)).

In finding that Manookian did not have standing to contest the proposed settlement, the Bankruptcy Court orally ruled:

> Mr. Manookian, to date, has not offered any *concrete* evidence, and I'll use that same word that Mr. Young has used, that this is a surplus case. What has been shown is there are many variables. As I've already mentioned, that go into determining the exact monetary value of bankruptcy estate.
>
> In this instance, the burden was on Mr. Manookian to produce *something tangible and concrete* that the Court could rely on in making a determination that the [sic] it's *a high likelihood* that this case would be a surplus case.

(Doc. No. 4-1, Hearing Transcript at 53-54) (emphasis added). This was legal error because it placed too heavy a burden on Manookian to establish standing.

"[T]he standing question is purely a legal one," Moran v. LTV Steel Co. (In re LTV Steel Co.), 560 F.3d 449, 452 (6th Cir.2009), and in the bankruptcy context only those that "are adversely affected pecuniarily" have standing, In re Moran, 566 F.3d 676, 680 (6th Cir. 2009). "Debtors, particularly Chapter 7 debtors, rarely have such a pecuniary interest because no matter how the estate's assets are disbursed by the trustee, no assets will revert to the debtor." In re Lunan, 523 F. App'x 339, 340 (6th Cir. 2013) (citing Cult Awareness Network, Inc. v. Martino (In re Cult Awareness Network, Inc.), 151 F.3d 605, 607 (7th Cir.1998)). Where, however, a debtor can show that the estate has assets in excess of liability that would entitle him or her to a distribution of the surplus, then the debtor has standing as a "person aggrieved." Id. In this regard, "[t]he debtor must show more than a metaphysical possibility of surplus; instead it 'must show that such surplus is a reasonable possibility.'" In re Khan, 544 F. App'x 617, 619 (6th Cir. 2013) (quoting In re Lunan,

5

523 Fed. App'x at 340).

Because Manookian did not present "something tangible and concrete" to establish a "high likelihood" there would be a surplus (as opposed to a reasonable possibility), he was unable to argue against the proposed settlement, and this may have affected his due process rights. Although the Trustee argues that Manookian's "interests were . . . considered" because Konvalinka's objections were heard during the second phase of the bifurcated hearing (Doc. No. 9 at 8), and while the Bankruptcy Court stated that "there is no harm to Mr. Manookian because the Court still is addressing the sufficiency of the settlement agreement in which the Trustee is attempting to enter into," (Doc. No. 4-1 at 56), different litigant's arguments do not necessarily go hand-in-hand, nor are they always fungible. As the Bankruptcy Court observed with regard to the propriety of the settlement agreement, "Mr. Manookian . . . doesn't get his day in court, but the issue gets its day in court." (Doc. No. 4-1 at 55). Nevertheless, a litigant's due process deserves consideration applying the correct legal standard.

In their respective briefs, the parties suggest that there either was or was not a reasonable possibility of a surplus, and this Court could make that determination based upon the appellate record. However, because "[a] bankruptcy court's finding that a reasonable possibility of a surplus does not exist is a finding of fact," In re Licata, 659 F. App'x 704, 706 (2d Cir. 2016), the Court will leave it to the Bankruptcy Judge to make that determination under the proper standard because he is intimately familiar with the facts of this case.

### III.

For the foregoing reasons, the Bankruptcy Court's "Order Granting Motion to Approve

6

Compromise and Settlement and Finding that Brian Manookian Lacks Standing" (Doc. No. 1-3) is hereby **VACATED**. This case is **REMANDED** to the Bankruptcy Court for further proceedings not inconsistent with this Memorandum Opinion.

    IT IS SO ORDERED.

_____
WAVERLY D. CRENSHAW, JR.
CHIEF UNITED STATES DISTRICT JUDGE